THE PEOPLE, *ex rel.* Robinson, *vs.* FERRIS and others.

*After an appeal from the determination of commissioners of highways in laying out a highway has been heard before the referees appointed by the county judge to decide such appeal, and submitted to them for their decision, they have no power to reopen the case and receive further testimony.*

*After the matter of the appeal has been submitted by the parties to the referees, their power for further hearing is at an end. The only power then left to them is to decide; which includes the incidental powers of adjourning from time to time, for that purpose, and to sign and cause to be filed the evidence of their decision.*

THIS is a common law certiorari to review the proceedings of referees appointed by the county judge of Washington county, to decide an appeal brought by the relator, from the determination of the commissioners of highways of the town of Argyle, in laying out a highway through the lands of the relator. There was no question arising as to their appointment, or as to the regularity of their acts, until after they had heard the proofs and allegations of the parties. At the time of hearing these proofs, the parties and their counsel present, after taking certain testimony, agreed upon the number of witnesses that should be sworn, and who were accordingly sworn and examined by the parties in pursuance of such agreement; and the *commissioners* and *appellant* then submitted the matter to the referees for their decision. This was July 15th, 1857. No adjournment was asked for by either party for the purpose of offering more testimony; the referees adjourned indefinitely as to time, but fixed Sandy Hill as the place to meet, to make their decision; and two days afterwards, to wit, the 17th of July, 1857, they did meet for the purpose of deciding the same. Upon consultation, two of the referees were of opinion that the opening of the road was not of sufficient importance to justify the expense of opening it. *One referee came to no conclusion, for want of sufficient evidence.* It was then agreed between two of them, that one, to wit, Weston, should draw up a decision in blank, and that Ferris, the other referee of the same opin-

ion, should take the paper and fill certain blanks therein; but it was not to be signed, nor any final decision made, until another meeting should be had, on an adjourned day. Weston drew up a blank decision in form, reversing the determination of the commissioners, and they adjourned. Ferris took the blank decision, filled it up, and signed it. *Before* the adjourned day arrived, but not on any appointed day, and on what day does not appear, several of the inhabitants of the town of Argyle appeared before the referees at Sandy Hill, and upon affidavits which set forth their reasons for so doing, they applied to the referees to have the hearing opened, and to take further evidence in the matter, upon the merits. At the adjourned day, last before mentioned, the referees again met, and then two of the referees refused to decide the appeal, and adjourned to a future day, and then information was given to the relator's son, of the application that had been made by citizens to open the hearing. The referees again met July 24th, 1857, and Gilbert D. Robinson, the relator's son, who appeared for him, requested them to suspend their decision upon such motion till the 7th August, then next, to give him time to interpose legal objections to granting such application. Their decision was then postponed to August 7th; on which day the relator, by his counsel, objected to a further hearing, and insisted that they could not entertain such application without affidavits, &c. Two of the referees then decided that such affidavits should be presented. The commissioners' counsel then read affidavits of five inhabitants of Argyle, in favor of the application to open the hearing. The relator's said son then asked for time to determine whether he could furnish counter affidavits. The referees then again adjourned to August 14th, at which time the parties agreed that the time for this purpose should be further extended to the 10th of October. On which last day the relator's counsel objected to the further hearing of the appeal. First, that they had no right; and second, if they should hold that they had the right, that this was not a

The People *v.* Ferris.

proper case to exercise it; and he read the affidavits of eight persons for that purpose. The counsel for the commissioners then proposed to read affidavits in reply, which was objected to, but allowed by the referees; and they were read. Arguments against allowing the application, and in favor of it, were then made, and another adjournment to the 19th of October was made, to allow the relator's counsel to furnish authorities in reply, which being furnished in writing on the last day, two of the referees, all three being present, decided to open the case, and grant a further hearing of the appeal, and appointed the 25th of November, 1857, at a certain place for the purpose, and written notice was given to the relator's counsel, but no other notice was given to the relator. On which last mentioned day, on account of sickness of the relator's counsel, a further adjournment was had till December 15th, 1857. On that day, all the referees being present, and the counsel of the parties being present, the relator's counsel again objected before the referees to receiving any further evidence on the part of the commissioners, on the ground that the matter had been before the referees; testimony heard and closed; and the matter submitted to them for consideration; and considered and passed upon by them; and that they had no power to reopen the case and receive further testimony. These objections were overruled by the referees, and the relator excepted. The commissioners then proceeded and offered new evidence; the case was again adjourned from time to time; the relator's counsel remaining and cross-examining witnesses, raising objections, and calling and examining witnesses on his side; proofs were again closed on the 10th of January, 1858. Various meetings of two of the referees were had, and adjournments were made until the 26th of January, 1858, when all three of the referees were present, two of whom decided to *affirm* the determination of the commissioners; Ferris refusing to sign the decision; and the decision was filed in the town clerk's office of Argyle January 29th, 1858. This decision being considered by them as defective in form, inas-

much as it did not show upon its face that all the referees were present, or had met at the time it was made, the two referees who did sign it, afterwards, on the 5th of February, 1858, without concurrence, consultation with, or notice to, the other referee, filed a supplemental order or statement, showing that all the commissioners were present, and they annexed this supplement to the decision. These proceedings are brought up for review.

*U. G. Paris* and *J. S. Coon*, for the commissioners.

*A. L. McDougall*, for the relator.

*By the Court,* POTTER, J. The referees in this case acquired jurisdiction of the matter by their appointment, and they then possessed all the powers that were formerly possessed by three judges of the common pleas of the county, under the provisions of title one, article four, chapter six, part one of the revised statutes. It is necessary, therefore, to look at the statute referred to, in order to see what powers such three judges did possess. By § 87, 1 *R. S.* 518, notice was required to be given to the commissioners, and to one or more of the applicants for the road, specifying the time and place at which the judges (now referees) will convene to hear the appeal. This was done. By § 88, *p.* 519, eight days' notice was required to be given, of the time mentioned therein, to the commissioners and applicant; and the manner of service is specified. Of all this there is no complaint. By § 89, "It shall be the duty of the judges to convene at the time and place mentioned in the notice, and hear the proofs and allegations of the parties. *They shall have power to issue process to compel the attendance of witnesses, and may adjourn from time to time as may be necessary."* All the power that is *expresssly* conferred to direct or control the action of the referees upon the hearing, or as to the mode of conducting the appeal, is above stated. Every other

power which they can exercise must be such as is incident to their express powers.   The effect of their action within their power need not at this place be referred to.   It is their duty to hear; it is also their duty to determine; and they are empowered to compel the attendance of witnesses; about which no question is raised; and all power conferred beyond this is, "they may adjourn from time to time, *as may be necessary.*" So far as adjournments were in question, there was no limit, so long as adjournments were *necessary,* which was a matter of discretion with the referees.   They had most undoubtedly this power; but adjournments *for further hearing* were no longer necessary in this case, after the case had been submitted.   There was then an end of the *hearing.*   It was then left with the referees for *decision.*   Their adjournments for the decision were perhaps *as necessary* as for the hearing, and the power to adjourn I have no doubt still continued, as a necessary incident of the power to decide.   They entered upon the duty of deciding.   They, or a majority of them, agreed upon some things in the way of deciding.   They adjourned to meet again.   A form of decision *reversing* the determination of the commissioners was prepared by one referee, and signed by another in accordance with the general views of these two of said referees, to be presented at the next meeting then appointed for the decision of the case. These facts, though they fall short of constituting a final decision, and which decision it was agreed should be deferred, are stated merely to show that the referees had then, in their own minds, *closed* the *hearing,* and had entered upon that part of their duty which required them to *decide* upon such hearing.   Between the two periods, that is before the next day of meeting to decide, several inhabitants of the town of Argyle, not parties recognized by the statute as having a right to be heard as parties, obtained a meeting of the referees, not on an adjourned day, and made an application to them to have the hearing opened; using such arguments and reasons as were calculated to influence the action of the referees.

This, though perhaps not so intended, was a most officious, improper and meddlesome interference with the rights of parties to a proceeding who were not present, and a tampering with the opinions of a body of officers acting upon their oaths, intrusted with the performance of solemn judicial duties, and the decision of important interests of the citizens. The courts should never look but with disapprobation upon such direct interference with the action of bodies upon whom the law has cast the power of disposing of, or affecting the property or interests of others. A justice of this court, or any other, would frown upon any such attempt upon him, and would punish as for contempt any such interference with a jury; and referees in a such case are not an exception. And though good faith, as it is claimed, may have been the moving principle, the precedent is dangerous, and should not be sanctioned or tolerated. The fact that one of the referees, who before that, at the last regular meeting, had drawn up a written decision of the case, had at the next adjourned day so changed his mind as to agree to deliberate upon the application so improperly made, is far from proving that such interference did not influence the decision. Though the return does not show it, the opinion of the referees may have become known outside; and if the application may be based upon such a state of things, a case is never settled or submitted. Though the faith of the parties may be pledged to a submission, interested individuals outside will not fail to open litigation, so long as either party is informed that weak points may be strengthened, or that the testimony of some witness should be impeached; that the weight of evidence against him before the referees must be changed. If such a practice could be tolerated such motions will be the order, and endless litigation the result; and if upon another hearing the weight is found in the other scale, another opening of the case will be applied for, and for the same reason it should be, but may not be granted; and this court would possess no power to correct the abuse. At this period of time the

The People *v.* Ferris.

real question in the case arises, to wit, the question of power. The question of necessary adjournment for the hearing had once been closed; all the discretion granted for that purpose had once been exercised and exhausted; the necessary adjournments for the purpose of deciding the case they doubtless still possessed, but even that discretion for the purpose of *deciding*, had now come to an end by their action upon this new view of the case, so improperly brought before and taken by the referees. Notice of this application of citizens of Argyle, before the referees, was given to the son of the relator only, and at a further adjourned meeting this son appeared and requested a withholding of their decision upon said application, to enable him to interpose legal objections, which being granted he did interpose his objections to their entertaining a motion for a further hearing. The objection was overruled by two of the referees, and they then and there entertained a motion upon affidavits, without the previous service of copies thereof upon the relator, but then adjourned to enable the relator to determine whether he would present counter-affidavits; and for reasons of convenience to parties several adjournments were had without action, and at the next meeting the relator's son again urged his objections to the power of the referees to open the hearing. Finally, this being overruled, he read affidavits to show that it was not a proper case for the exercise of such power. Replying affidavits were admitted. All these affidavits are returned with the writ.

By reference to these affidavits it is seen that those which were read in behalf of the commissioners and applicants for the road are affidavits impeaching the evidence offered on the hearing on the part of the relator, and cumulative evidence on the other side. The referees decided the motion in favor of granting a further hearing. The question now fairly arises, does the power granted by the statute authorize this proceeding by a body known in law as one of inferior and limited jurisdiction? Is the power to hear and decide such a motion, necessarily

incident to the power granted, which is power to adjourn for such further time as shall be reasonable? Is it absolutely necessary to the due administration of justice that they should exercise such powers? As no precedent can be found in the books of authority—no rules regulating such a practice—as these officers possess no powers by implication, but are, like all other inferior and subordinate officers and tribunals that are creatures of the statute, I think they are confined to the powers *expressly* conferred, or such as are necessarily incident to such conferred power. And as in all proceedings which may deprive a party of his estate, they are to be held to a strict construction of .the statute, I have not been able to see in the features of this case that it is one that requires to be made an exception to the general rule, and to those long established safeguards to property. It is not necessary to say, in deciding this case, that there are no circumstances that would authorize such referees to open a case for a rehearing, if by accident or mistake one of the parties had been deprived of any hearing whatever, or even of but a partial hearing. It may be that such a power is incident to the power granted, and absolutely essential to the due administration of justice; as accidents and mistakes must and will occur, where no human foresight can guard against them. But that is not the case here,. and no such question is to be decided. This case had been heard upon its merits and submitted upon the faith of the parties who had a right to be heard, and upon the advice of counsel, and the duty of deciding had been entered upon by the referees, and then not on account of any accident or mistake, or default, but because persons not recognized as parties to the proceeding, and who had no right to appear at all, either because they had heard, or because they suspected the weight of evidence was against their wishes and interests, asked to have the case opened. For what? To impeach some of the testimony standing in their way, and to add to the weight of evidence on the other side. A court of original jurisdiction having the power, would have denied such a motion,

The People *v.* Ferris.

and would doubtless have rebuked the application. Such a power as has here been exercised by the referees, is not within the contemplation of the statute conferring the power, and would be a dangerous one to intrust to such a body, as is sufficiently demonstrated in this case. There is no case of precedent cited; and I have not been able to find a reported case where such authority has been exercised. The powers even of referees for the trials of civil causes which are commenced in the highest courts, and whose actions and conduct have ever been under the control of the courts, have never until recently been extended so far; and even they are subject to review by the court. They are not authority for this proceeding.

It is sufficient to say, that when the matter was submitted to the referees by the parties, their power for further *hearing* was at an end. The only power then left to them was to decide; this included the incidental power of adjourning from time to time for this purpose, and to prepare and sign, and cause to be filed, the evidence of their decision. All proceedings to open the hearing, and all further hearing of the matter after the first submission, were without authority. They had no jurisdiction to open the case; they had lost all further jurisdiction to hear it upon the merits. All action following the motion to open was void.

It is not necessary to discuss the effect of the decision signed by two of the referees, nor of their power without consultation with their associate, to amend it. It is perfectly clear that their change of opinion upon their subsequent action was based upon such subsequent proceedings. The result is, their whole action must be vacated and set aside.

Ordered accordingly.

[Schenectady General Term, January 7, 1862. *James, Rosekrans* and *Potter*, Justices.]